__ Priority
__ Send
__ Clsd
__ Enter
__ JS-5/JS-6
__ JS-2/JS-3

FILED
CLERK, U.S DISTRICT COURT
MAY -2 2005
CENTRAL DISTRICT OF CALIFORNIA
BY         DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GROBER,<br><br>Plaintiff,<br><br>v.<br><br>MAKO PRODUCTS, INC., AIR SEA LAND PRODUCTIONS, INC., CINEVIDEOTECH, INC., SPECTRUM EFFECTS, INC., and DOES 1-10,<br><br>Defendants. | CASE NO. CV 04-8604 NM (Mcx)<br><br>ORDER GRANTING PLAINTIFF/COUNTER-DEFENDANT'S MOTIONS TO DISMISS COUNTERCLAIMS OF DEFENDANTS MAKO PRODUCTS, INC. AND SPECTRUM EFFECTS, INC. |

## I. INTRODUCTION

On October 18, 2004, Plaintiff David Grober ("Grober") filed a complaint for patent infringement against Defendants Mako Products, Inc., Air Sea Land Productions, Inc., CineVideoTech, Inc., Spectrum Effects, Inc., and Does 1-10. On December 20, 2004, Mako Products, Inc. ("Mako") answered the Complaint and asserted counterclaims for: (1) declaratory relief ("First Counterclaim"); (2) antitrust violations ("Second Counterclaim"); and (3) violation of California

DOCKETED ON CM
MAY 2 2005
BY ___ 026

Business and Professions Code §§ 17200 and 17500 ("Third Counterclaim"). On February 10, 2005, Spectrum Effects, Inc. ("Spectrum") answered the Complaint and asserted counterclaims identical to those of Mako's for: (1) declaratory relief ("First Counterclaim"); (2) antitrust violations ("Second Counterclaim"); and (3) violation of California Business and Professions Code §§ 17200 and 17500 ("Third Counterclaim"). Now pending before the court are Grober's motions to dismiss Mako's and Spectrum's Second and Third Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. FACTS

Grober owns U.S. Patent No. 6,611,662 (the "'662 patent"), entitled "Autonomous Self Leveling, Self Correcting Stabilized Platform." Compl. ¶ 5; Mako's Answer ¶ 5; Spectrum's Answer ¶ 5. Grober alleges that Mako and Spectrum "use[], sell[], rent[] and offer[] for use, sale and rental one or more products including the MakoHead that infringe one or more claims of the '662 patent." Compl. ¶¶ 13, 17. Mako and Spectrum deny these allegations. Mako's Answer ¶¶ 13, 17; Spectrum's Answer ¶¶ 13, 17. They allege that Grober obtained the '662 patent "by intentionally making knowingly false statements and improper omissions to the U.S. Patent Office through documents submitted thereto." Mako's Countercls. at 9; Spectrum's Countercls. at 10. Mako and Spectrum further allege that Grober "intends to eliminate competition in the relevant market and monopolize the relevant market by requesting an injunction beyond the scope and the term of any valid patent and by demanding improper damages from multiple companies," including Mako and Spectrum. Mako's Countercls. at 8, ¶ 6; Spectrum's Countercls. at 9, ¶ 6.

## III. DISCUSSION

### A. Legal Standard

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted in the complaint and should be granted only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. See Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994). However, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." Pareto v. Fed. Deposit Ins. Corp., 139 F.3d 696, 699 (9th Cir. 1998) (citation omitted). Dismissal is proper if a complaint is vague, conclusory, general, or fails to set forth any material facts in support of the allegation. See North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 583 (9th Cir. 1983). The plaintiff bears the burden of pleading sufficient facts to state a claim. See Richards v. Harper, 864 F.2d 85, 88 (9th Cir. 1988) (courts will not supply essential elements of a claim that were not initially pled).

If the court chooses to dismiss the complaint or a portion thereof, it must then decide whether to grant leave to amend. Generally, leave to amend is denied only if it is clear that amendment would be futile because "the deficiencies of the complaint could not be cured by amendment." Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (per curiam)); see also Poling v. Morgan, 829 F.2d 882, 886 (9th Cir. 1987) (citations omitted).

B. Application

1. *Antitrust Violations (Second Counterclaims)*

Mako's and Spectrum's Second Counterclaims attempt to allege violations of § 2 of the Sherman Act, which makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. In Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172 (1965), the Supreme Court held that "the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." 382 U.S. at 174. To recover under Walker Process, Mako and Spectrum must show that (1) the '662 patent was procured by knowing and willful fraud practiced by Grober on the Patent Office, and (2) all the elements necessary to establish a § 2 violation are present. See id. at 179 (Harlan, J., concurring).

a. Knowing and Willful Fraud

To maintain an antitrust claim based upon fraud on the Patent Office, a plaintiff must allege "deliberate fraud," that is, knowing and willful acts of misrepresentation or omission before the Patent Office. See id. at 177; Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1070-71 (Fed. Cir. 1998). Such a misrepresentation or omission must evidence an intent to deceive the Patent Office. Nobelpharma, 141 F.3d at 1070; see also Cataphote Corp. v. DeSoto Chem. Coatings, Inc., 450 F.2d 769, 772 (9th Cir. 1971). Furthermore, the misrepresentation or omission must be material. Nobelpharma, 141 F.3d at 1071. In other words, it must be averred that the patent would not have issued but for the fraud. Papst Motoren GMbH & Co. KG v. Kanematsu-Goshu (U.S.A.) Inc., 629 F. Supp. 864, 870 (S.D.N.Y. 1986). Lastly, because a Walker Process claim is based on fraud, it must be pleaded in accordance with Federal Rule of Civil Procedure 9(b). See, e.g., id. at 870-71; Micro Motion, Inc. v. Exac Corp., 112

F.R.D. 2, 3 (N.D. Cal. 1985). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

Although Mako and Spectrum assert in their Oppositions that their antitrust counterclaims are based upon Grober's fraud on the Patent Office, they fail to allege such fraud in their antitrust counterclaims. While they do allege in their counterclaims for violation of California Business and Professions Code §§ 17200 and 17500 that "Grober obtained the subject patent by intentionally making knowingly false statements and improper omissions to the U.S. Patent Office through documents submitted thereto," Mako and Spectrum fail to incorporate this allegation into their antitrust counterclaims. Mako's Countercls. at 9; Spectrum's Countercls. at 10. In any event, this conclusory allegation, which fails to state the circumstances constituting the fraud with any particularity, is insufficient to meet the requirements of Rule 9(b).[1]

### b. Other Necessary Elements of a § 2 Claim

Even were Mako's and Spectrum's fraud allegations sufficient, their antitrust counterclaims cannot survive a motion to dismiss unless all the other elements of a § 2 case are sufficiently alleged as well. The Supreme Court explained in Walker Process that "[t]o establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would . . . be necessary to appraise the exclusionary power of the illegal patent claim in

---

[1] Rule 9(b) requires "[a]verments of fraud [to] be accompanied by the who, what, when, where, and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation omitted). A plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392-93 (9th Cir. 1988). Furthermore, the "plaintiff must set forth what is false or misleading about a statement, and why it is false." Vess, 317 F.3d at 1106.

terms of the relevant market for the product involved." 382 U.S. at 177. Accordingly, a plaintiff must allege the relevant market, the dominance of the patented device therein, and the injurious consequences to the plaintiff of the patent's enforcement. See id. at 178. "The relevant market has two dimensions, the relevant product market which includes a determination of the lack or presence of readily available substitutes and the relevant geographic market whe[re] the competition is geographically confined." Golan v. Pingel Enter., Inc., 310 F.3d 1360, 1369 (Fed. Cir. 2002).

Here, Mako and Spectrum posit the relevant product market to be "stabilization system[s] for television and film cameras." Mako's Countercls. at 8, ¶ 5; Spectrum's Countercls. at 9, ¶ 5. They fail, however, to define a relevant geographic market. Nor do they allege the portion of the relevant market allegedly dominated by Grober's patented device. Mako and Spectrum merely allege in conclusory language that Grober "has a dangerous probability of attaining monopoly power through predatory and anti-competitive conduct." Mako's Countercls. at 9, ¶ 8; Spectrum's Countercls. at 9, ¶ 8. Although there is no special rule requiring greater factual specificity in antitrust pleadings, see Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc., 627 F.2d 919, 924 (9th Cir. 1980), the essential elements of an antitrust claim must be alleged in more than vague and conclusory terms to defeat a motion to dismiss. Kingray, Inc. v. Nat'l Basketball Ass'n, Inc., 188 F. Supp. 2d 1177, 1186-87 (S.D. Cal. 2002). If the alleged facts "do not at least outline or adumbrate a violation of the Sherman Act, the plaintiffs will get nowhere merely by dressing them up in the language of antitrust." Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 736 (9th Cir. 1987) (internal quotations omitted). Accordingly, Mako's and Spectrum's Second Counterclaims are dismissed with leave to amend.

c. Noerr-Pennington Doctrine

Grober argues that regardless of whether Mako and Spectrum can adequately allege a Walker Process claim, he is immune from antitrust liability under the Noerr-Pennington doctrine. In Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), the Supreme Court held that "the Sherman Act does not prohibit . . . persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." 365 U.S. at 136; accord United Mine Workers of Am. v. Pennington, 381 U.S. 657, 669 (1965). Noting that the First Amendment to the United States Constitution grants citizens the right to petition the government, the Court reasoned that the Sherman Act should not be read in a way that might invade this right by punishing "political activity" through which "the people . . . freely inform the government of their wishes." Noerr, 365 U.S. at 137-38. Because "a representative democracy such as this . . . depends upon the ability of the people to make their wishes known to their representatives," the Supreme Court held that petitioning activity of this kind is generally immune from liability under the Sherman Act. Id. at 137.

The Court, however, carved out a limited exception to this rule for "sham" petitioning. See id. at 144. It concluded that "application of the Sherman Act would be justified" when petitioning activity, "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." Id.

In California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972), the Court extended the Noerr-Pennington doctrine to "the approach of citizens . . . to administrative agencies . . . and to courts." 404 U.S. at 510. In this context, there is also a limited exception to Noerr-Pennington immunity for "sham" litigation, which is litigation that meets the following two criteria: (1) "the

lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) "the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use [of] the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon." Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993) [hereinafter PRE] (emphasis in original) (internal quotations and citations omitted).

In footnote 6 of its PRE opinion, the Supreme Court left open the question of Noerr's applicability to a Walker Process claim. See id. at 61 n. 6. The Federal Circuit has subsequently held that PRE and Walker Process provide alternative legal grounds on which a patentee may be stripped of Noerr-Pennington immunity from the antitrust laws. See Nobelpharma, 141 F.3d at 1071; In re Indep. Serv. Orgs. Antitrust Litig., 203 F.3d 1322, 1326 (Fed. Cir. 2000). "Consequently, if the . . . elements of Walker Process fraud, as well as the other criteria for antitrust liability, are met, such liability can be imposed without the additional sham inquiry required under PRE." Nobelpharma, 141 F.3d at 1071 (holding, in addition, that "whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a question of Federal Circuit law").[2] Thus, if upon amendment, Mako and Spectrum can adequately allege a Walker Process claim, such allegations would be sufficient to preclude application of the Noerr-Pennington doctrine.

2. *Violation of Cal. Bus. & Prof. Code §§ 17200 & 17500 (Third Counterclaims)*

Mako's and Spectrum's Third Counterclaims allege that Grober violated California Business and Professions Code §§ 17200 and 17500.

---

[2] Moreover, prior to Nobelpharma, the Ninth Circuit had suggested that allegations of Walker Process fraud are sufficient to meet PRE's sham litigation standard. See Hydranautics v. Filmtec Corp., 70 F.3d 533, 538 (9th Cir. 1995).

### a. California Civil Code § 47(b)

As an initial matter, Grober argues that the "litigation privilege" under California Civil Code § 47(b) bars Mako's and Spectrum's Third Counterclaims.[3] This privilege affords absolute immunity from tort liability based upon communications made in or regarding judicial proceedings. See Rubin v. Green, 4 Cal. 4th 1187, 1193-95 (1993). "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990). The privilege also covers pre-litigation communications with "some relation" to an anticipated lawsuit. Rubin, 4 Cal. 4th at 1194-95. Here, Mako's and Spectrum's Third Counterclaims are not based upon communications Grober made in this, or any other, judicial proceeding. Rather, their counterclaims are based upon Grober's representations in his patent application to the Patent Office, which resulted in the issuance of an allegedly fraudulent patent. Those statements were made for the purpose of obtaining the '662 patent; they were not made in relation to the instant action. Accordingly, § 47(b)'s absolute privilege does not apply.

### b. California Business & Professions Code § 17200

California Business & Professions Code § 17200 prohibits "unfair competition," defined as including "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The "unlawful" prong of § 17200 proscribes "anything that can properly be called a business practice and that at the same time is forbidden by law." Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 717-18 (2001) (emphasis omitted) (quoting Barquis v. Merchants

---

[3] Section 47(b) provides in relevant part: "A privileged publication or broadcast is one made . . . [i]n any . . . judicial proceeding." Cal. Civ. Code § 47(b).

9

Collection Ass'n of Oakland, Inc., 7 Cal. 3d 94, 113 (1972)). "Virtually any law[,] federal, state or local[,] can serve as a predicate for an action under . . . section 17200." Id. at 718. Thus, § 17200 "borrows" violations of other laws and makes them independently actionable as unfair competitive practices. Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). In addition, "a practice may be deemed unfair [under § 17200] even if not specifically proscribed by some other law." Id. "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Id. at 187.

In the instant action, Mako and Spectrum argue that their Third Counterclaims "specifically state[] that Grober violated federal patent law under Title 35 U.S.C. §§ 102, 103, 112, 115, and/or 116 when he filed false statements with the [P]atent [O]ffice," and that "[h]is violation of these patent laws[] constitutes a violation of § 17200 under the 'unlawful' prong." Mako's Resp. to Grober's Mot. to Dismiss Countercls. ("Mako's Resp.") at 12; Spectrum's Resp. to Grober's Mot. to Dismiss Countercls. ("Spectrum's Resp.") at 12. However, Mako's and Spectrum's Third Counterclaims do not, in fact, contain an allegation that Grober violated the above patent laws. Moreover, a state law unfair competition claim based upon a patentholder's conduct in obtaining his patent is preempted by federal patent law unless the plaintiff alleges that the defendant patentholder perpetrated fraud before the Patent Office. Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1336-37 (Fed. Cir. 1998), overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356 (Fed. Cir. 1999). Such allegations of fraudulent conduct must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). See

10

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104-05 (9th Cir. 2003). As discussed above, Mako and Spectrum fail to plead Grober's alleged fraud on the Patent Office with particularity. See supra Part III.B.1.a.

Mako and Spectrum next argue that Grober's conduct violated the Sherman Act and that such a violation subjects Grober to liability under the "unlawful" prong of § 17200. They further assert that Grober's attempt to operate as a monopoly through the enforcement of an allegedly fraudulent patent constitutes an "unfair" practice under § 17200. However, as discussed supra Part III.B.1, Mako and Spectrum fail to adequately allege an antitrust violation in their counterclaims.

Lastly, Mako and Spectrum argue that Grober's alleged fraud on the Patent Office constitutes a "fraudulent" business practice under § 17200. A business practice is "fraudulent" under § 17200 if members of the public are likely to be deceived. South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 888 (1999). Here, Mako and Spectrum allege that Grober perpetrated fraud on the Patent Office by "making knowingly false statements and improper omissions to the U.S. Patent Office through documents submitted thereto." Mako's Countercls. at 9; Spectrum's Countercls. at 10. These representations were made to the Patent Office, not to the public. Thus, it cannot be said that Grober's fraud on the Patent Office likely deceived members of the public.

Based upon the foregoing, Mako's and Spectrum's Third Counterclaims, to the extent they are based upon § 17200, are dismissed without prejudice. The court grants Mako and Spectrum leave to amend as they may be able to allege an "unlawful" or "unfair" business practice under § 17200.

### c. California Business & Professions Code § 17500

California Business and Professions Code § 17500 prohibits the making or dissemination of "any statement," in connection with the sale of a product or service, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal.

11

Bus. & Prof. Code § 17500; see Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 210 (1983); Nagel v. Twin Labs., Inc., 109 Cal. App. 4th 39, 51 (2003). "To state a cause of action under [§ 17500], it is necessary only to show that 'members of the public are likely to be deceived.'" Comm. on Children's Television, 35 Cal. 3d at 211; accord Day v. AT & T Corp., 63 Cal. App. 4th 325, 332 (1998). "Allegations of actual deception, reasonable reliance, and damage are unnecessary." Id.

Here, Mako's and Spectrum's Third Counterclaims allege that "[a]s a result of Grober's intentional fraud on the Patent Office, he caused a fraudulent patent to be issued and published." Mako's Countercls. at 10; Spectrum's Countercls. at 10. Mako and Spectrum argue that because "[t]his false patent is likely to deceive the public because it now appears that Grober owns a valid patent, which he does not," Grober has violated § 17500. Mako's Resp. at 9; Spectrum's Resp. at 9. The problem with this argument is that neither Grober's statements to the Patent Office nor the publication of the patent by the Patent Office were made "in connection with the sale of a product or service." Nagel, 109 Cal. App. 4th at 51; see Cal. Bus. & Prof. Code § 17500 (requiring untrue or misleading statement to be made or disseminated "with intent directly or indirectly to dispose of real or personal property or to perform services, . . . or to induce the public to enter into any obligation relating thereto"). Grober's statements in his application to the Patent Office were made to obtain a patent, not to sell a product or service. Nor was the Patent Office's publication of the patent made for the purpose of selling a product or service. Because these underlying facts fail to constitute a violation of § 17500, Mako's and Spectrum's Third Counterclaims insofar as they are based on § 17500 are dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** Grober's motions to dismiss Mako's and Spectrum's Third Counterclaims insofar as they are based on California Business & Professions Code § 17500 with prejudice. The court further **GRANTS** Grober's motions to dismiss Mako's and Spectrum's antitrust counterclaims (Second Counterclaims) and Third Counterclaims insofar as they are based on California Business & Professions Code § 17200 without prejudice. Mako and Spectrum may have until May 13, 2005 to file Amended Counterclaims for antitrust violations and for violation of California Business & Professions Code § 17200.

IT IS SO ORDERED.

DATED: April 29, 2005

Nora M. Manella
United States District Judge

13