BRIAN W. WARWICK, ESQ. (*Pro Hac Vice)*
Varnell and Warwick, P.A.
P.O. Box 1870
Lady Lake, Florida 32158
Tel. (352) 753-8600
Email: bwarwick@varnellanwarwick.com

*Attorney for John Dann, Jordan Klein, Sr. and Jordan Klein, Jr.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | | |
|---|---|---|
| David Grober, et al.,<br><br>*Plaintiff,*<br><br>v.<br><br>Mako Products, Inc., et al.,<br><br>*Defendants.* | ) | Case No.: 2:04 CV 8604 JZ<br><br>AFFIDAVITS OF JOHN DANN, JORDAN KLEIN, SR., and JORDAN KLEIN, JR.<br><br>Judge: HONORABLE JACK ZOUHARY |

Pursuant to the Court's Order of July 24, 2015, (Dkt. 504) JOHN DANN, JORDAN KLEIN, SR., and JORDAN KLEIN, JR., submit the following affidavits showing cause why this Court should not hold them in contempt for failing to comply with this Court's Orders (Docs. 436 and 457).

Attached are the affidavits of Messrs. Dann, Klein, Sr., and Klein, Jr., together with Exhibit A (which is identical for all three affidavits) and the FedEx confirmation showing the scheduled pickup for today from John Dann of the package containing the CD's (referenced in ¶9 of Mr. Dann's Affidavit) being sent to Plaintiff's counsel.

Dated: August 7, 2015

VARNELL AND WARWICK, P.A.

By: /s/ Brian W. Warwick, Esq.
Brian W. Warwick, Esq. (*Pro Hac Vice*)
VARNELL & WARWICK, P.A
P.O. Box 1870
Lady Lake, FL 32158
Telephone: (352) 753-8600
Email: bwarwick@varnellanwarwick.com

*ATTORNEYS FOR JOHN DANN, JORDAN KLEIN, SR. AND JORDAN KLEIN, JR.*

**AFFIDAVIT OF JOHN DANN**

**STATE OF FLORIDA )**
**:**
**COUNTY OF MARION )**

Before me, the undersigned authority, personally appeared John Dann who was sworn and states:

1. I am over eighteen years of age and am competent to give this testimony.

2. In June 2015, I was served with a subpoena from Plaintiffs asking for the extremely production of any and all documents, equipment or otherwise related to the MakoHead.

3. Because all responsive documents were already produced through the discovery process over the pendency of this litigation, I believed that all documents responsive to the development of the MakoHead and the rental history of the device by the Rental House Defendants had been produced long ago when the depositions took place in this matter in 2008.

4. Therefore, I misinterpreted the request as seeking the actual MakoHead devices, the computer equipment and the records of Oceanic Production Equipment, Ltd., as opposed to Mako Products, Inc. Because the prior orders of this Court ordered that we retain "evidence" and the bankruptcy Court allowed the "equipment" to be sold through bankruptcy, I believed that there was nothing left to produce other than the computers and MakoHead devices themselves and filed a response accordingly.

5. On July 24, 2015, Judge Zouhary entered a Show Cause Order taking issue with my previous response. In the last paragraph of its Order, this Court stated: "To the extent Plaintiffs' recent subpoena seeks re-production of documents already produced by either the Kleins, Dann, or other parties, this Show Cause Order may be satisfied by each individual filing a sworn affidavit stating the basis upon which he has personal knowledge that all documents responsive to Plaintiffs' subpoena in his possession, custody, or control have been produced, by whom they were produced, and the date(s) of the production." This affidavit is filed in compliance with this statement.

6. This matter was filed in 2004 and discovery proceeded through the Markman Hearing and the Appeal to the Federal Circuit in 2010. Between 2004 and 2009, myself, Mako Product, the Klein Defendants, Fern Creek Electronics and the Rental House Defendants all produced discovery at various times. I have no way of determining, for certain, precisely when which documents were produced. I do recall producing everything in my possession responsive to the requests and there were many.

7. Fortunately, recently Mr. Grober issued a subpoena to Mako's former counsel, Varnell & Warwick, P.A. and requested that all documents regarding the MakoHead be produced. Exhibit A attached hereto is correspondence from Mr. Warwick asserting that he produced the following documents to Plaintiffs on August 3, 2015.

A. Documents Produced by Mako Products, Inc., bates Nos. 0045 – 2630;

B. Mako Products Income Statements and Balance Sheets;

C. Documents Produced by Jordan Aero Marine/Jordan Klein Sr., bates No. 1-40;

D. Documents Produced by Jordan Klein Film & Video, bates Nos. 1-23;

E. Documents Produced by Fern Creek Electronics, bates Nos. 1-1498;

F. Documents Produced by Air Sea Land, bates Nos. 1-548;

G. Documents Produced by Blue Sky Aerials, bates Nos. 1-324;

H. Documents Produced by Cinevideotech, bates Nos. 1-119;

I. Documents Produced by Spectrum Effects, bates Nos. 1-50;

J. Confidential Photos of the MakoHead, bates No. 2611;

K. Non-Confidential Photos of the Makohead.

8. These are the only responsive documents that I am aware of with one exception. In 2008, Plaintiffs sought to copy some emails from my business computer. There was some disagreement regarding which emails were to be copied and which were protected by the attorney-client privilege.

9. Regardless, simultaneous with the filing of this Affidavit I am producing six(6) CD's containing approximately 9383 emails. These are the only documents not listed above that I know to exist.

10. The MakoHead units themselves and other equipment were purchased out of bankruptcy by Oceanic Production Equipment, Ltd., and not me personally.

JOHN DANN

On this 7th day of August, 2015, before me, the undersigned Notary Public, in and for said state, personally appeared JOHN DANN, known to me to be the person who signed on the preceding document, and acknowledged to me that he signed it for the purpose therein stated.

DANIA C. ELLINGTON
Notary Public - State of Florida
My Comm. Expires Oct 23, 2015
Commission # EE 135900
Bonded Through National Notary Assn.

Dania C Ellington
Notary Public

My commission expires: Oct 23, 2015

**AFFIDAVIT OF JORDAN KLEIN, SR.**

**STATE OF FLORIDA )**
**:**
**COUNTY OF MARION )**

Before me, the undersigned authority, personally appeared Jordan Klein, Sr. who was sworn and states:

1. I am over eighteen years of age and am competent to give this testimony.

2. In June 2015, I was served with a subpoena from Plaintiffs asking for the extremely production of any and all documents, equipment or otherwise related to the MakoHead.

3. Because all responsive documents were already produced through the discovery process over the pendency of this litigation, I believed that all documents responsive to the development of the MakoHead and the rental history of the device by the Rental House Defendants had been produced long ago when the depositions took place in this matter in 2008.

4. Therefore, I misinterpreted the request as seeking the actual MakoHead devices, the computer equipment and the records of Oceanic Production Equipment, Ltd., as opposed to Mako Products, Inc. Because the prior orders of this Court ordered that we retain "evidence" and the bankruptcy Court allowed the "equipment" to be sold through bankruptcy, I believed that there was nothing left to produce other than the computers and MakoHead devices themselves and filed a response accordingly.

5. On July 24, 2015, Judge Zouhary entered a Show Cause Order taking issue with my previous response. In the last paragraph of its Order, this Court stated: "To the extent Plaintiffs' recent subpoena seeks re-production of documents already produced by either the Kleins, Dann, or other parties, this Show Cause Order may be satisfied by each individual filing a sworn affidavit stating the basis upon which he has personal knowledge that all documents responsive to Plaintiffs' subpoena in his possession, custody, or control have been produced, by whom they were produced, and the date(s) of the production." This affidavit is filed in compliance with this statement.

6. This matter was filed in 2004 and discovery proceeded through the Markman Hearing and the Appeal to the Federal Circuit in 2010. Between 2004 and 2009, myself, Mako Product, the Klein Defendants, Fern Creek Electronics and the Rental House Defendants all produced discovery at various times. I have no way of determining, for certain, precisely when which documents were produced. I do recall producing everything in my possession responsive to the requests and there were many.

7. Fortunately, recently Mr. Grober issued a subpoena to Mako's former counsel, Varnell & Warwick, P.A. and requested that all documents regarding the MakoHead be produced. Exhibit A attached hereto is correspondence from Mr. Warwick asserting that he produced the following documents to Plaintiffs on August 3, 2015.

A. Documents Produced by Mako Products, Inc., bates Nos. 0045 – 2630;

B. Mako Products Income Statements and Balance Sheets;

C. Documents Produced by Jordan Aero Marine/Jordan Klein Sr., bates No. 1-40;

D. Documents Produced by Jordan Klein Film & Video, bates Nos. 1-23;

E. Documents Produced by Fern Creek Electronics, bates Nos. 1-1498;

F. Documents Produced by Air Sea Land, bates Nos. 1-548;

G. Documents Produced by Blue Sky Aerials, bates Nos. 1-324;

H. Documents Produced by Cinevideotech, bates Nos. 1-119;

I. Documents Produced by Spectrum Effects, bates Nos. 1-50;

J. Confidential Photos of the MakoHead, bates No. 2611;

K. Non-Confidential Photos of the Makohead.

8. These are the only responsive documents that I am aware of.

9. The MakoHead units themselves and other equipment were purchased out of bankruptcy by Oceanic Production Equipment, Ltd., and not me personally.

JORDAN KLEIN, SR.

On this 7th day of August, 2015, before me, the undersigned Notary Public, in and for said state, personally appeared JORDAN KLEIN, SR., known to me to be the person who signed on the preceding document, and acknowledged to me that he signed it for the purpose therein stated.

Notary Public

My commission expires: Oct 23, 2015



## AFFIDAVIT OF JORDAN KLEIN, JR.

**STATE OF FLORIDA** )
:
**COUNTY OF MARION**

Before me, the undersigned authority, personally appeared Jordan Klein, Jr. who was sworn and states:

1. I am over eighteen years of age and am competent to give this testimony.

2. In June 2015, I was served with a subpoena from Plaintiffs asking for the extremely production of any and all documents, equipment or otherwise related to the MakoHead.

3. Because all responsive documents were already produced through the discovery process over the pendency of this litigation, I believed that all documents responsive to the development of the MakoHead and the rental history of the device by the Rental House Defendants had been produced long ago when the depositions took place in this matter in 2008.

4. Therefore, I misinterpreted the request as seeking the actual MakoHead devices, the computer equipment and the records of Oceanic Production Equipment, Ltd., as opposed to Mako Products, Inc. Because the prior orders of this Court ordered that we retain "evidence" and the bankruptcy Court allowed the "equipment" to be sold through bankruptcy, I believed that there was nothing left to produce other than the computers and MakoHead devices themselves and filed a response accordingly.

5. On July 24, 2015, Judge Zouhary entered a Show Cause Order taking issue with my previous response. In the last paragraph of its Order, this Court stated: "To the extent Plaintiffs' recent subpoena seeks re-production of documents already produced by either the Kleins, Dann, or other parties, this Show Cause Order may be satisfied by each individual filing a sworn affidavit stating the basis upon which he has personal knowledge that all documents

responsive to Plaintiffs' subpoena in his possession, custody, or control have been produced, by whom they were produced, and the date(s) of the production." This affidavit is filed in compliance with this statement.

6. This matter was filed in 2004 and discovery proceeded through the Markman Hearing and the Appeal to the Federal Circuit in 2010. Between 2004 and 2009, myself, Mako Product, the Klein Defendants, Fern Creek Electronics and the Rental House Defendants all produced discovery at various times. I have no way of determining, for certain, precisely when which documents were produced. I do recall producing everything in my possession responsive to the requests and there were many.

7. Fortunately, recently Mr. Grober issued a subpoena to Mako's former counsel, Varnell & Warwick, P.A. and requested that all documents regarding the MakoHead be produced. Exhibit A attached hereto is correspondence from Mr. Warwick asserting that he produced the following documents to Plaintiffs on August 3, 2015.

A. Documents Produced by Mako Products, Inc., bates Nos. 0045 – 2630;

B. Mako Products Income Statements and Balance Sheets;

C. Documents Produced by Jordan Aero Marine/Jordan Klein Sr., bates No. 1-40;

D. Documents Produced by Jordan Klein Film & Video, bates Nos. 1-23;

E. Documents Produced by Fern Creek Electronics, bates Nos. 1-1498;

F. Documents Produced by Air Sea Land, bates Nos. 1-548;

G. Documents Produced by Blue Sky Aerials, bates Nos. 1-324;

H. Documents Produced by Cinevideotech, bates Nos. 1-119;

I. Documents Produced by Spectrum Effects, bates Nos. 1-50;

J. Confidential Photos of the MakoHead, bates No. 2611;

K. Non-Confidential Photos of the Makohead.

8. These are the only responsive documents that I am aware of.

9. The MakoHead units themselves and other equipment were purchased out of bankruptcy by Oceanic Production Equipment, Ltd., and not me personally.

JORDAN KLEIN, JR.

On this 7th day of August, 2015, before me, the undersigned Notary Public, in and for said state, personally appeared JORDAN KLEIN, JR., known to me to be the person who signed on the preceding document, and acknowledged to me that he signed it for the purpose therein stated.




Notary Public

My commission expires: Oct. 17, 2017

# <u>EXHIBIT A</u>




August 3, 2015

Edwin P. Tarver, Esq.
Lauson & Tarver LLP
880 Apollo Street
Suite 301
El Segundo, CA 90245

Re: Voice International, Inc. v. Mako Products, Inc. et al.

Dear Mr. Tarver:

On July 23, 2015, I accepted service of three subpoenas issued by you in the above referenced litigation. Pursuant to Fed. R. Civ. Pro. 45(a) the subpoenas are improper as they state that they are being issued by the United Stated District Court of "Colorado," which is simply untrue. Rule 45(a) (2) states that "a subpoena must issue from the court where the action is pending." The fact that this information was hand-written on the subpoena indicates that you are still allowing Mr. Grober to prepare documents and file them under your name without review. Despite the facial violation of Rule 45, I will respond to the subpoenas as follows.

First, the unorthodox form of Exhibit A makes it extremely difficult to know exactly what is being requested. Towards the top, it states "Documents to be produced are those that relate in any way to the MakoHead, including prototypes or derivatives, and their development, construction, use, rental, lease, or sale to any party." However, then the document goes on to discuss at length a document review that took place in May 2008 where Plaintiffs were not permitted to access attorney-client documents. Exhibit A goes on to state:

> The fact that each of those emails have at least one or more of the restricted email addresses means that each of those emails additionally reside on the email servers of the individuals owning those addresses, and whom were stated to be Warwick and Varnell or their office assistants. This subpoena is specifically aimed at retrieving those 5,000 emails as well as any other documents that fall under the specifications of this subpoena.

Thus, it appears that you are seeking two categories of documents: All documents that relate in any way to the Makohead, and emails to my law firm from my clients. Although I must object to the scope of both requests, I will provide what I have.

First, at one time or another, I represented Jordan Klein, Jr., Jordan Klein Sr., Mako Products, Fern Creek Electronics, Air Sea Land Productions Inc., Cinevideotech, Spectrum Effects, and Blue Sky Aerials. "All responsive documents" relating to the Makohead were previously produced though Mako Products on one of the other entities listed above. Although

this firm no longer represents any of these individuals, the information requested is so broad that it would include attorney-client privileged communications. The request is also so broad that it includes emails and work product which are privileged.

To the extent that the inner workings of the MakoHead are at issue, that information has already been produced prior to the first Markman hearing. Indeed, there was sufficient evidence that your expert was able to opine as to the infringing nature of the device. Therefore, this firm is unable to provide any documents responsive to the first category of documents that have not already been produced. In fact, approximately one year ago, new counsel for the rental house defendants, Coast Law Group, asked for a copy of the entire file for the rental house defendants. At that time, a copy was provided of all known discovery produced to date. I read this request as essentially the same.

In a final effort to finally extricate myself from this case once again, however, I am producing all the documents I have in my possession regarding the Makohead. Enclosed with this letter are 6 CD's which include the following documents:

1. Documents Produced by Mako Products, Inc., bates Nos. 0045 – 2630;
2. Mako Products Income Statements and Balance Sheets;
3. Documents Produced by Jordan Aero Marine/Jordan Klein Sr., bates No. 1-40;
4. Documents Produced by Jordan Klein Film & Video, bates Nos. 1-23;
5. Documents Produced by Fern Creek Electronics, bates Nos. 1-1498;
6. Documents Produced by Air Sea Land, bates Nos. 1-548;
7. Documents Produced by Blue Sky Aerials, bates Nos. 1-324;
8. Documents Produced by Cinevideotech, bates Nos. 1-119;
9. Documents Produced by Spectrum Effects, bates Nos. 1-50;
10. Confidential Photos of the MakoHead, bates No. 2611;
11. Non-Confidential Photos of the Makohead.

Neither myself nor any other member of my firm have any other documents related to the MakoHead or Mako Products.

To the extent you are seeking correspondence between me and my clients, such documents are protected by the attorney-client relationship and/or the work product doctrine. The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose

is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. As we stated last Term in *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980): "The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." And in *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), we recognized the purpose of the privilege to be "to encourage clients to make full disclosure to their attorneys." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584 (1981). This privilege survives bankruptcy and even death. See Swidler & Berlin v. United States, 524 U.S. 399, 406, 118 S. Ct. 2081, 2086, 141 L. Ed. 2d 379 (1998).

In addition, to the extent you are seeking emails sent to my law firm by clients that are referenced in Exhibit 1 to the Subpoena, those emails also do not exist. As you know, I have not represented any party in this litigation for several years. I have reviewed the file in this matter and discussed the request with my partner, Janet Varnell and my former employee, Mary Arnst. Suffice it to say, we have no emails responsive to this request. I will endeavor to explain why although I am not obligated to do so under Federal Rule 45.

Sometime during the first six months of 2010, Varnell & Warwick created a firm website, varnellandwarwick.com. Along with the website we created new email accounts for all employees at such as bwarwick@varnellandwarwick.com. Thereafter, all firm employees ceased using the prior email accounts to avoid any confusion. The firm took no steps to copy or save the former emails as they were not deemed necessary under our interpretation of Florida Bar Ethics Rules as attorney emails are generally covered by either attorney-client privilege, or work product and it is within the discretion of the attorney whether or not to keep such items. Downloading thousands of emails would serve no purpose and saving them on the server or cloud was deemed to be cost prohibitive.

Upon receipt of your subpoena I endeavored to determine if I could still access the AOL email account I used previously. After having to create a new password, I was able to access the account but there were no old emails listed. The email account was completely empty. It appears that if you do not access the AOL system regularly, the emails are not saved indefinitely. Ms. Varnell and Ms. Arnst confirmed the same for their old email accounts. Since none of these accounts were accessed recently, this is no surprise. As a result, I do not have access to any of the emails from John Dann or other Mako employees that are requested in your subpoenas.

In addition to the fact that the emails are not available, I must also object to this request as it appears that you specifically seek email correspondence between my law firm and my former clients at Mako Products. Even if this information was available, I would still have to object to this request pursuant to Federal Rule of Civil Procedure 45(e)(2), as correspondence between a lawyer and his client is protected by the attorney-client privilege.

Furthermore, I take issue with the form and improper and unprofessional attack on me in your subpoena. You infer that I somehow knowingly denied access to the emails in 2008. To the contrary, I had a lengthy conversation with Joel Bennett, then attorney for Mr. Grober, about the attorney-client protected information. He understood and agreed that such information could not be copied or downloaded and that any correspondence between myself, my staff and Mako was protected by the attorney-client privilege. I was not contacted by Mr. Wheelbarger or Mr. Bennett during the inspection at Mako regarding the number of emails at issue or Mr. Dann's understanding of our agreement. I would have been happy to discuss these issues. As my presence at the beginning of the inspection and my correspondence with Mr. Bennett shows, I was willing to allow relevant non-privileged documents to be copied because I was certain that all relevant documents had already been produced. However, Mr. Wheelbarger had been retained by Mr. Grober and not by an experienced lawyer and, as a result, he had little to no litigation experience and was wholly unfamiliar with the process and the work product doctrine. In fact, he appeared to have virtually no experience in litigation. An experienced expert would have been able to discuss and understand the difference between an email that was originated by Dann or another and one that was merely forwarded to me and my staff. If he had contacted Mr. Bennett I am sure we could have worked something out at that time. Why Mr. Wheelbarger did not contact Mr. Bennett in this regard is unknown to me.

Moreover, the email accounts of myself, my partner and my staff are not and have never been "evidence" in this case and a court order to "preserve evidence" does not apply to our email accounts as non-parties. Certainly, any order entered by the Bankruptcy Court cannot apply to this firm as this order was entered long after this firm ceased representing Mako Products. Your reference to these orders in the subpoena is therefore inappropriate.

Finally, in addition to providing a full copy of everything in my file to Coast Law Group, my recollection is that all relevant emails and pertinent information had already been provided by the time that the request for a review of Mr. Dann's computer came up. The review was simply to make sure that all responsive documents were produced and to dispel Mr. Grober's unfounded belief that there was some scheme to copy his device. Additional evidence from the bookkeeping software of Mako shows the very limited revenue obtained by this venture. Substantial documentation were also produced by Fern Creek electronics and the Rental House Defendants. Together, I am confident that all the relevant documents were timely produced in this matter and have been produced again in the above CDs. If your law firm has not maintained good records of the discovery produced in this matter, my firm is not obligated to produce it again. I am copying counsel for the Rental House defendants so that they are aware of what is being produced and request a copy of the same.

Sincerely,

Brian W. Warwick

BWW/kms
Enclosures

cc: Chris Polychron, Esq.
Jordan Klein, Sr.
Jordan Klein, Jr.
Matt Kutcher, Spectrum Effects.

**From:** pickup@fedex.com
**Date:** August 7, 2015 at 1:39:43 PM EDT
**To:** jd@oceanicproductionequipment.com
**Subject: FedEx Pickup Confirmation**

# FedEx Pickup Confirmation — FedEx Express OCFA88

Thank you for shipping with FedEx. Your pickup request is scheduled. FedEx will pick up your shipment at the address below.

| | | | |
|---|---|---|---|
| Company | **Select or enter** | **FedEx Express** | **Confirmation no. OCFA88** |
| Contact Name | **John Dann** | Total no. of packages | **1** |
| Country/Location | **United States** | Total weight | **1 lbs** |
| Address | **10197 SE 144th PL** | Pickup Date | **08/07/2015** |
| City | **Summerfield** | Pickup Time | **2:00PM - 6:00PM** |
| State | **Florida** | | |
| ZIP code | **34491** | | |
| Phone no. | **3522667794** | | |

This is a post-only mailing. Please do not reply to this message.